UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARJORIE A. FOCARAZZO,

          Plaintiff,

                  <u>DECISION AND ORDER</u>

                  10-CV-6285L

      v.

UNIVERSITY OF ROCHESTER,

          Defendant.
_____

  Plaintiff Marjorie Focarazzo ("plaintiff") brings this action against her former employer, the University of Rochester (the "University"), alleging age-based discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. ("ADEA") and the New York State Human Rights Law, N.Y. Exec. Law §290 et seq. ("NYHRL"). Discovery is now completed, and the University moves for summary judgment dismissing the plaintiff's claims (Dkt. #15). For the reasons that follow, the University's motion for summary judgment is granted, and the complaint is dismissed.

**FACTUAL AND PROCEDURAL BACKGROUND**

  Plaintiff was initially hired by the University in 1998, and worked in several secretarial positions before being hired in May 2001 as the Administrative Assistant to the Associate Dean for Academic Affairs for the University's School of Nursing, Dr. Judith Baggs.

  Plaintiff's performance in this position under Dr. Baggs was generally well-rated, with the exception of a June 8, 2005 letter to plaintiff memorializing an inappropriate comment she had

allegedly made about a coworker, in which she expressed a wish to "take a contract out on [the coworker's] life." (Dkt. #15-21).

In October 2005, Dr. Kathy Rideout was appointed to the position of Associate Dean for Academic Affairs, and became plaintiff's supervisor. Dr. Rideout evaluated plaintiff's job performance positively through May of 2007. However, thereafter, several performance issues began to emerge. On April 9, 2008, plaintiff abruptly left a meeting with Rideout in which Rideout had made criticisms of her job performance. Two days later, plaintiff wrote to Rideout to apologize, explaining that she had needed time to gather her thoughts, and attributing the recent deficiencies in her job performance to personal problems, which were interfering with her work. (Dkt. #15-7).

On April 28 and April 29, 2008, Rideout wrote letters to plaintiff documenting conversations between them about plaintiff's job performance, and listing several recent issues, including plaintiff's failure to complete certain advanced preparations for an on-site evaluation visit by an accreditation agency, failure to attend planning meetings, and frequent, unexplained absences from her office. (Dkt. #15-8, #15-9). Both letters identified specific actions plaintiff could take to improve performance in the designated areas (e.g., resume attending meetings, leave an explanation and anticipated return time when absent from the office, etc.). *Id*.

On May 28, 2008, Rideout completed a performance evaluation for plaintiff, identifying plaintiff as "meeting expectations" in all areas of performance except for "Resourcefulness/Results", which was rated as "needs improvement." In written comments, Rideout expressed concern about plaintiff's frequent absence from the office, stating that faculty members had complained about plaintiff's inaccessibility, plaintiff's failure to ask for assistance at times when she was unsure what to do, and referenced the performance issues memorialized in her April 2008 correspondence with plaintiff. (Dkt. #15-10).

Rideout's concerns with plaintiff's unexplained absences from her office apparently intensified, and on July 17, 2008, Rideout wrote to plaintiff to confirm recent conversations and request that plaintiff contact her if she was going to be out of the office. Rideout emphasized that

"respectful collaboration and communication with me are an essential part of your position," and warned that "additional performance issues may lead to further corrective action, up to and including termination." (Dkt. #15-11).

A week later, on July 24, 2008, Rideout again wrote to plaintiff to confirm a conversation, and discuss plaintiff's continued lack of availability and failure to report expected absences, arrange for coverage during absences, complete projects, and follow up on correspondence. Again, Rideout warned plaintiff that failure to address these issues might lead to corrective action, up to and including termination. (Dkt. #15-12).

On January 16, 2009, Rideout wrote to plaintiff that she had "not sufficiently demonstrated the improvements necessary in [her] job performance to successfully meet the requirements of [her] position," and officially terminated plaintiff, citing the concerns raised in previous correspondence. (Dkt. #15-15).

Although plaintiff characterizes Rideout's criticisms of her performance as "nitpicky" and contends that on one occasion, Rideout criticized plaintiff for not attending a meeting when in fact Rideout had approved plaintiff' request for time off that day, she generally admits that the letters and reviews, and the meetings and conduct described therein, took place. (Dkt. #20-2, Dkt. #15-17 at 157:14-18, 162:5-15, 164:12-19).

Following her termination, plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), alleging age-based discrimination. The EEOC issued a 90-day right-to-sue letter on March 19, 2010, and plaintiff timely commenced the instant action on May 26, 2010, claiming discriminatory termination in violation of the ADEA and NYHRL.

## DISCUSSION

### I. Summary Judgment in Discrimination Cases

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). While courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a typical facet of discrimination actions, *see Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir. 1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), *quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

II. **Plaintiff's Discriminatory Termination Claim**

Plaintiff's claims of employment discrimination are subject to the familiar burden-shifting analysis first articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, she must establish a prima facie case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002). Once plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory explanation offered by defendant for its conduct is a pretext, and that the conduct was actually the result of discrimination. *See St. Mary's Honor Center*, 509 U.S. 502, 508 (1993).

While granting plaintiff the liberal interpretation and favorable inferences due to her as a nonmovant, I find that she has nonetheless failed to establish a prima facie case of discrimination, and/or to rebut the University's legitimate, nondiscriminatory reason for terminating her employment.

It is undisputed that plaintiff is over the age of forty, that her termination from employment constitutes an adverse employment action,[1] and that to the extent that plaintiff was replaced by a thirty-five year old individual outside of the protected class, she was terminated under circumstances giving rise to an inference of discrimination. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000 ("[g]enerally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination"); *Krupman v. Iona Preparatory Sch.*, 2011 U.S. Dist. LEXIS 40079 at *6 (S.D.N.Y. 2011) (replacement by a younger employee establishes circumstances giving rise to an inference of age-based discrimination).

However, plaintiff has not produced evidence sufficient to establish the remaining element of her prima facie case, that she was performing her job satisfactorily. Significantly, plaintiff does not deny that her job performance suffered in 2007-2008 and thereafter in the manner and to the extent described by the University, nor has she adduced any evidence that would otherwise refute the reasons given by the University for terminating her employment.

Instead, plaintiff alleges that she was performing well and was favorably reviewed up until some point in 2008, when Rideout, who plaintiff had previously considered to be a "supporter" and

---

[1] Plaintiff does not appear to claim that her more negative performance reviews and/or letters from Rideout criticizing her performance constitute adverse employment actions. To the extent that such an argument could be made, it would be without merit, since it is undisputed that neither the letters nor the performance reviews resulted in any negative changes in plaintiff's working conditions, and that plaintiff continued to receive salary raises and full benefits throughout her employment. *See e.g., Zavala v. Cornell Univ.*, 2013 U.S. Dist LEXIS 64063 (N.D.N.Y. 2013) (negative performance evaluation is only an adverse employment action where it results in adverse changes in work conditions); *Trachtenberg v. Dept. of Educ. of the City of New York*, 2013 U.S. Dist. LEXIS 48410 (S.D.N.Y. 2013) (same); *Collier v. City of New York*, 2009 U.S. Dist. LEXIS 14814 at *16 (S.D.N.Y. 2009) (written warnings, without additional work-related repercussions, do not constitute adverse employment actions).

"confidant," started to become hypercritical of her performance, "nitpicking [p]laintiff's every move." (Dkt. #1 at ¶12, #15-17 at 163:21-164:8). However, excessive scrutiny by a supervisor is not an adverse employment action by itself, and plaintiff has produced no evidence to suggest that Rideout's criticisms of her performance were motivated in any way by plaintiff's age, or that Rideout, who was "about the same age" as plaintiff, treated or assessed younger employees any differently from plaintiff. (Dkt. #15-18 at 94:10-14). *See Novak v. Waterfront Comm'n of N.Y. Harbor*, 2013 U.S. Dist. LEXIS 30130 at *21-*22 (excessive scrutiny and even harsh or undue criticism by an employer do not constitute an adverse employment action); *Graves v. Deutsche Bank Secs., Inc.*, 2012 U.S. Dist. LEXIS 174691 at *15-*16 (S.D.N.Y. 2012) (claim of pretext for discrimination is "strongly undercut" where individual who decided to terminate plaintiff is, himself, a member of the same protected class); *Edwards v. City of New York*, 2005 U.S. Dist. LEXIS 34376 at *46-*47, *50 (S.D.N.Y. 2005) (plaintiff's argument that discrimination is indicated merely by his membership in a protected class, combined with scrutiny from supervisors, is "the type of groundless speculation that summary judgment is designed to root out," and is insufficient to suggest an inference of discrimination as part of a prima facie case, or to prove pretext).

Plaintiff also cites certain remarks by Rideout to the effect that plaintiff, who while working at the University had attained a master's degree and was proceeding with additional master's-level work, had become "overqualified" for her position. Plaintiff contends that Rideout's comments were "ageist" remarks, suggesting that her termination on performance grounds was pretextual. Although plaintiff cites no case law for this proposition, it would appear that she is attempting to rely upon the Second Circuit's observations that, "a conclusory statement that a person is overqualified may easily 'serve as a mask for age discrimination.'" *Bay v. Times Mirror Magazines, Inc.*, 936 F. 2d 112, 118 (2d Cir. 1991), *quoting Binder v. Long Island Lighting Co.*, 933 F.2d 197, 192-194 (2d Cir. 1991). *See also Taggert v. Time Inc.*, 924 F.2d 43, 48 (1991). However, the Second Circuit's comments in that vein are of no appreciable relevance here. They were made solely in the context of cases wherein overqualification is the sole "nondiscriminatory reason" offered by the employer for an

adverse employment action, and relate to whether employers might use the facially nondiscriminatory reason of "overqualification" as a euphemistic pretext for refusing to hire older workers. *Id*. This holding does not relate, nor has it been applied, to the issue of whether a supervisor's stray remarks referencing an employee's *bona fide* overqualification for her job comprise evidence of pretext, where overqualification is neither given by the employer as the nondiscriminatory reason for its actions, nor suggested by any evidence as having played any role in them. Here, the University never claimed to have terminated plaintiff's employment on the basis of educational overqualification, nor is there any evidence that it did so. Rather, it is undisputed that plaintiff's termination was undertaken on the grounds of performance problems, and plaintiff, while emphasizing that other aspects of her performance were positive, does not deny that the majority of those performance deficiencies existed. (Dkt. #20-2).

Accordingly, even assuming *arguendo* that plaintiff could establish a prima facie case of age-based discrimination, neither plaintiff's characterization of Rideout as "nitpicky" nor Rideout's reference to plaintiff's academic overqualification for her secretarial job provide evidence of pretext sufficient to foreclose summary judgment, particularly in light of plaintiff's failure to deny or refute the substantial evidence of her performance problems beginning in or around 2007 and continuing through her termination in 2009. *See Malacarne v. City Univ. of New York*, 2008 U.S. App. LEXIS 17059 at *6-*7 (2d Cir. 2008) (uncontested, documented evidence of poor job performance overcomes plaintiff's unsupported allegation that her termination was motivated by discriminatory animus) (unpublished opinion). *See generally Thornley v. Penton Publishing, inc.*, 104 F.3d 26, 29 (2d Cir. 1997) (satisfactory job performance is determined using the employer's criteria, and not some hypothetical objective standard); *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985) (courts may, and often must, rely upon evaluations completed by supervisors in determining if an employee's performance is satisfactory).

It bears repeating that plaintiff's performance problems did not consist of one or two isolated incidents, but were raised and documented on numerous occasions over a two-year period. The

documented instances of poor performance involved serious matters relating directly to plaintiff's job duties.

Plaintiff does not dispute that her performance was criticized, and the University appears to have been lenient and reasonable in its efforts to prod plaintiff to perform as required. Plaintiff failed to do so, and her employment was therefore terminated. After reviewing all of the evidence, that action seems appropriate. Even if it were not, plaintiff's claims must fail because she has not produced evidence that her performance issues were seized upon as a pretext for age discrimination. Plaintiff's speculation that age was a factor is insufficient at this stage of the case to defeat defendant's motion for summary judgment.

For the same reasons, plaintiff's discrimination claims under the NYHRL are dismissed. *See Wanamaker v. Columbian Rope Company*, 108 F.3d 462, 467 (2d Cir. 1997) (NYHRL age discrimination claims are governed by the same standards as those under the ADEA).

## CONCLUSION

For the foregoing reasons, the University's motion for summary judgment (Dkt. #15) is granted, and the complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      May 20, 2013